IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **R. S., et al.,** | CASE NO. 3:20 CV 2791 |
| Plaintiffs, | |
| v. | JUDGE JAMES R. KNEPP II |
| **LUCAS COUNTY CHILDREN SERVICES, et al.,** | |
| Defendants. | **MEMORANDUM OPINION AND ORDER** |

### INTRODUCTION

Plaintiffs R.S. and T.H. bring this action against numerous Defendants, including Lucas County Children Services ("LCCS"), LCCS employees individually and in their official capacities, and the Board of Commissioners of Lucas County, Ohio ("the Board"). (Doc. 49). As is relevant to the instant motion Plaintiffs bring six claims for relief against LCCS, LCCS employees, and the Board: (1) violations of civil rights under 42 U.S.C. §§ 1983, 1985, and 1986; (2) negligence; (3) negligence *per se*; (4) conspiracy; (5) false imprisonment; and (6) failure to report.[1] *Id*. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3). Defendants LCCS and its employees, and the Board (hereinafter "Defendants") filed a Motion for Judgment on the Pleadings seeking to dismiss all claims asserted against them. (Doc. 60). Plaintiffs opposed (Doc. 67), and Defendants replied (Doc. 69). For the reasons stated below, Defendants' motion is granted.

---

[1] Plaintiffs also bring claims of conspiracy, child abuse, rape, gross sexual imposition, sexual imposition, sexual battery, unlawful sexual conduct with a minor, importuning, voyeurism, felonious assault, aggravated assault, assault, negligent assault, permitting child abuse, aggravated menacing, menacing, intentional infliction of emotional distress, and negligent infliction of emotional distress against parties not relevant to the instant action.

**BACKGROUND**

On July 2, 2014, LCCS learned Plaintiffs' sibling (Child-8) was brought to the emergency room with multiple injuries. (Doc. 41-1, at 2). The next day, LCCS caseworker Rebecca Von Sacken spoke to a St. Vincent Hospital caseworker, who was evaluating Child-8 for a failure to thrive. *Id*. at 4. The evaluation showed Child-8's injuries were indicative of abuse; LCCS scheduled a family case conference with Child-8's mother. *Id*. at 4-5. At the meeting, Plaintiffs' mother admitted to harming Child-8. *Id*. at 5. The next day, Plaintiffs and their siblings were removed from their mother's custody. (Doc. 49, at 9). After an initial home study, Anthony and Alisa Haynes were awarded temporary custody. (Doc. 41-2). Anthony Haynes was the mother's pastor, and Alisa is Anthony's wife. (Doc. 59-2, at 1). The children's mother consented to the placement. (Doc. 41-2).

Before Plaintiffs were placed with the Haynes family, LCCS obtained historical background information regarding Anthony and Alisa. *See* Doc. 49-1. The information indicated Anthony had a substantiated report of sexual abuse against him in 2003. *Id*. Alisa Haynes had two substantiated reports of sexual abuse against her in 2000 and 2003. *Id*. at 2. However, background checks on both individuals showed that as of the date of placement, neither had a criminal record. (Doc. 59-3). The Lucas County Juvenile Court granted legal custody of Plaintiffs and their siblings to the Haynes family on March 5, 2015. (Doc. 41-4). Until Plaintiffs were eventually removed from the home, Plaintiffs endured neglect, abuse, rape, assault, and battery at the hands of the Haynes family. *See* Doc. 49, at 9; *see also United States v. Haynes*, 2021 WL 288562 (N.D. Ohio).

On October 28, 2015, LCCS received a referral alleging Child-2 (Plaintiff T.H.) did not have proper clothing. (Doc. 41-5, at 5). It alleged T.H. attended school in ill-fitting shoes, had to

2

re-use underwear as she only owned three pairs, was repeatedly punched by the Haynes' children, and had to sleep on a urine-soaked mattress. *Id*. LCCS caseworker Charmaine West met with the Haynes family and Plaintiffs on October 30, 2015. *Id*. Upon inspection, West discovered Plaintiffs' bedroom was "located in the basement, and the room reeked of urine." *Id*. Child-3's (Plaintiff R.S.) bed was made of a board balanced on cinder blocks. *Id*. The other children told West they slept on the concrete floor. *Id*. A Complaint in Dependency was filed against the Haynes on November 4, 2015 and Plaintiffs were removed from the Haynes' home the same day. *Id*.

## STANDARD OF REVIEW

A motion for judgment on the pleadings under Federal Civil Rule 12(c) is reviewed under the same standard as a Rule 12(b)(6) motion. *Coley v. Lucas County*, 799 F.3d 530, 536–37 (6th Cir. 2015). When deciding either motion, this Court presumes all factual allegations in the complaint to be true and makes all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). A complaint will only survive if it states a plausible claim for relief on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). To do so, the complaint must state factual allegations that allow this Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bates v. Green Farms Condominium Ass'n*, 958 F.3d 470, 480 (citing *Iqbal*, 556 U.S. at 678). A complaint is not required to contain "detailed factual allegations," but must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Twombly*, 550 U.S. at 555.

3

DISCUSSION

The Lucas County Defendants have moved for judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c), as to Counts One through Four. Each will be discussed in turn.

Federal Law Claims

Plaintiffs bring federal claims against the Lucas County Defendants under 42 U.S.C. §§ 1983, 1985, and 1986. (Doc. 49, at 19-20). Defendants argue each of the claims are not plausible. (Doc. 60, at 13). The Lucas County Defendants include LCCS and the Board. (Doc. 49). All claims against LCCS include Defendants John/Jane Doe 1-20, Charmaine West, Susan Hickey, Rebecca Von Sacken, and Laura Lloyd-Jenkins. *Id.* at 6. Claims against the Board include the Board as an entity and Board members Tina Skeldon Wozniak, Pete Gerken, and Gary L. Byers. *Id.*

Section 1983 does not, on its own, serve as a source of substantive rights but merely serves as a mechanism for enforcing individual rights secured elsewhere. *Moldowen v. City of Warren*, 578 F.3d 351, 376 (citing *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal citation omitted)). To bring a successful § 1983 claim, Plaintiffs must allege (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law. *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006).

Plaintiffs have alleged violations of the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. (Doc. 49, at 19). Plaintiffs also allege violations of the Constitution of the State of Ohio. *Id.*

*Ohio Constitution*

As an initial matter, the alleged violations of the Ohio Constitution do not state a claim under § 1983. States cannot create federal constitutional rights actionable under § 1983. *Wilson*

4

*v. Morgan*, 477 F.3d 326, 332-33 (6th Cir. 2007) (citing *Harrill v. Blount County*, 55 F.3d 1123, 1125-26 (6th Cir. 1995). Plaintiffs do not dispute this. (Doc. 67, at 7). Therefore, Plaintiff's alleged violations of the Ohio Constitution do not establish a plausible § 1983 claim. Any such claim is therefore dismissed.

*Eighth Amendment*

Plaintiffs have also failed to allege plausible § 1983 claims through the Eighth Amendment. An Eighth Amendment analysis is only appropriate after "the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions." *Ingraham v. Wright*, 430 U.S. 651, 671 n. 40 (1977) (citing *United States v. Lovett*, 328 U.S. 303, 317-18 (1946)). "[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law[.]" *Phillips v. City of Cincinnati*, 479 F. Supp. 3d 611, 655 (S.D. Ohio 2020) (quoting *Ingraham*, 430 U.S. at 671 n. 40).

Plaintiffs cite case law equating the placement of children by the State into care outside their homes to that of prisoners under the Eighth Amendment. (Doc. 67, at 14-5) (citing *K.H. ex rel. Murphy v. Morgan*, 914 F.2d 846 (7th Cir. 1990); *Taylor ex rel. Walker v. Ledbetter*, 818 F.2d 791 (11th Cir. 1987)). But the case at hand is distinguishable. In *K.H. ex rel. Murphy*, child welfare workers who placed an infant into the care of abusive foster parents were found liable under the Eighth Amendment. *See* 914 F.2d at 848. However, the infant was removed from the custody of her parents involuntarily. *Id*. This was an important distinction, as the Court noted the State is not responsible "for a child's *voluntary* placement by the natural parents in an abusing private foster home." *Id*. at 849 (citing *Milburn v. Anne Arundel Cty. Dep't of Soc. Servs.*, 871 F.2d 474, 476 (4th Cir. 1989) (emphasis in original)); *see also Taylor*, 818 F.2d at 797 ("a child

5

*involuntarily* placed in a foster home is in a situation so analogous to a prisoner in a penal institution … that the foster child may bring a section 1983 action[.]") (emphasis added).

In the present case, the Haynes family was granted temporary custody of Plaintiffs with the consent of their mother in July 2014. (Doc. 41-2, at 1). In February 2015, the Haynes family was granted legal custody of Plaintiffs, again with the agreement of the children's parents. (Doc. 59-2, at 7). Because Plaintiffs were placed into the custody of the Haynes voluntarily and not pursuant to a criminal prosecution, a § 1983 claim through the Eighth Amendment is inapplicable. Thus, any claims relating to violations of the Eighth Amendment are dismissed.

*Fifth and Fourteenth Amendments*

Plaintiffs also allege violations of due process rights under the Fifth and Fourteenth Amendments. (Doc. 49, at 19). Plaintiffs contend Defendant Board of Commissioners is subject to liability under *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 694 (1978). (Doc. 67, at 15). In response, Defendants argue the Board does not have the power to supervise, manage, or otherwise control Defendant LCCS, so Plaintiffs have not stated a plausible claim against them. (Doc. 60, at 11).[2] In response, Plaintiffs argue one of the named defendants alleged to have actual knowledge of abuse, Laura Lloyd-Jenkins, is a member of the Board of Lucas County Children Services and was the County Administrator of Lucas County. (Doc. 67, at 6). Plaintiffs argue her appointment to the Board was a government policy performed by the Board that exhibits control over LCCS. *Id*.

A political subdivision and its employees may not be held liable for a § 1983 solely on a *respondeat superior* theory. *D'Ambrosio v. Marino*, 747 F.3d 378, 388-89 (6th Cir. 2014) (citing

---

2. Defendants also argue Defendant Lucas County, Ohio lacks capacity to be sued. (Doc. 60, at 10). Lucas County is no longer a named party, so the Court need not address Defendants' argument.

*Monell*, 436 U.S. at 691). Instead, a government entity can only be sued under § 1983 when the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy" inflicts a constitutional violation. *Monell*, 436 U.S. at 694 (1978). These violations must be a pattern of "persistent misconduct" that would give Defendants "the opportunity to conform to constitutional dictates[.]" *Berry v. Delaware Cty. Sheriff's Off.*, 796 F. App'x 857, 862 (6th Cir. 2019) (quoting *D'Ambrosio*, 747 F.3d at 388 (internal citation omitted)). The existence of an unconstitutional custom cannot be inferred from a single instance of misconduct. *Meirs v. Ottawa Cty.*, 821 F. App'x 445, 453 (6th Cir. 2020) (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 433 (6th Cir. 2005)). The policies must be the "moving force" behind the constitutional violation. *Monell*, 436 U.S. at 694.

The board of county commissioners possesses only such power and jurisdiction as are conferred expressly by statutory enactment. *State ex rel. Cook v. Seneca Cty. Bd. of Comm'rs*, 175 Ohio App. 3d 721, 728 (2008). Any grant of authority "must be in clear and certain terms," and the presumption against authority requires the grant to be strictly construed. *Geauga Cty. Bd. of Comm'rs v. Munn Rd. Sand & Gravel*, 67 Ohio St. 3d 579, 583 (1993). Thus, "in the absence of a specific statutory grant of authority, a board of county commissioners is powerless to enact legislation." *Id*.

The Board possesses a limited set of powers and duties dictated by statute. Ohio Rev. Code §§ 305, 307. These statutes do not expressly grant the Board power over the day-to-day operations of LCCS. *See id*. Instead, the Board only has the power to appoint LCCS board members and "levy taxes and make appropriations sufficient to enable the public children

7

services agency to perform its functions and duties[.]" Ohio Rev. Code § 5153.35; *see also* Ohio Rev. Code § 5153. In relevant part, LCCS has the power to:

> (1) Make an investigation concerning any child alleged to be an abused, neglected, or dependent child;
>
> (2) Enter into agreements with the parent, guardian, or other person having legal custody of any child, or with the department of job and family services, department of mental health and addiction services, department of developmental disabilities, other department, any certified organization within or outside the county, or any agency or institution outside the state, having legal custody of any child, with respect to the custody, care, or placement of any child, or with respect to any matter, in the interests of the child, provided the permanent custody of a child shall not be transferred by a parent to the public children services agency without the consent of the juvenile court;
>
> (3) Accept custody of children committed to the public children services agency by a court exercising juvenile jurisdiction;
>
> (4) Provide such care as the public children services agency considers to be in the best interests of any child adjudicated to be an abused, neglected, or dependent child the agency finds to be in need of public care or service;
>
> (5) Provide social services to any unmarried girl adjudicated to be an abused, neglected, or dependent child who is pregnant with or has been delivered of a child;
>
> (6) Make available to the bureau for children with medical handicaps of the department of health at its request any information concerning a crippled child found to be in need of treatment under sections 3701.021 to 3701.028 of the Revised Code who is receiving services from the public children services agency;
>
> (7) Provide temporary emergency care for any child considered by the public children services agency to be in need of such care, without agreement or commitment;
>
> (8) Find certified foster homes, within or outside the county, for the care of children, including handicapped children from other counties attending special schools in the county;
>
> (9) Subject to the approval of the board of county commissioners and the state department of job and family services, establish and operate a training school or enter into an agreement with any municipal corporation or other political subdivision of the county respecting the operation, acquisition, or maintenance of any children's home, training school, or other institution for the care of children maintained by such municipal corporation or political subdivision;

Ohio Rev. Code § 5153.16(A). Reviewing the relevant sections of the Code, the Board of Commissioners is not expressly granted power over the day-to-day operations of LCCS.

Additionally, there nothing in the statute to suggest the Board had the authority to enact policies on behalf of LCCS in relation to Plaintiffs' claims. *See Loggins v. Franklin Cty.*, 218 F. App'x 466, 474 (6th Cir. 2007) (granting summary judgment against plaintiff who offered no evidence the Board enacted or even had the authority to enact policies that allegedly caused injuries). Likewise, there is no statutory indication Defendant Lloyd-Jenkins, as County Administrator, had any authority to control the daily operations of LCCS. Thus, Defendant Board of Commissioners is entitled to judgment as a matter of law as to the federal claims against it.

Even assuming, *arguendo*, Defendant Board of Commissioners had sufficient control, the *Monell* claim still fails. Plaintiffs allege Defendant Board of Commissioners had a policy or custom "of failing to investigate allegations of abuse[.]" (Doc. 67, at 16). During the relevant time period, public children services agencies were required to "investigate, within twenty-four hours, each report of child abuse or child neglect that is known or reasonably suspected or believed to have occurred…" Ohio Rev. Code § 2151.421(F)(1)[3]. Plaintiffs point to LCCS's annual report, which states "[t]he majority of referrals screened in (99 percent) were assigned a non-emergency, 72-hour response time. The remaining one percent were assigned an emergency, one-hour response time." (Doc. 67-5, at 9). This, according to Plaintiffs, shows a custom of failing to meet the 24-hour investigation requirement "for all but one percent of abuse allegations." (Doc. 67, at 16).

Plaintiffs raise these allegations in their Memorandum in Opposition to Defendants' Motion for Judgment on the Pleadings. *See* Doc. 67. However, these allegations were not included in Plaintiffs' First Amended Complaint. When considering a Rule 12(c) motion, the Court generally limits its review to the Complaint and documents attached to the Complaint as

---

3. The relevant statute has since been modified and is now located at Ohio Revised Code § 2151.421(G)(1).

exhibits. *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989). The First Amended Complaint, and attached exhibits, do not contain any allegations of a custom or policy causing a constitutional violation to Plaintiffs. *See generally* Doc. 49.

Even if the cited "policy" were included in the Complaint, Plaintiffs' claim would still fail. In both the First Amended Complaint and the Memorandum in Opposition to Defendants' Motion for Judgment on the Pleadings, Plaintiffs fail to allege how the policy was the "moving force" behind the constitutional violation. *Monell*, 436 U.S. at 694. Plaintiffs have not alleged a two-day delay in investigation was the proximate cause of the alleged constitutional violations they suffered. As such, Plaintiffs have not alleged a plausible *Monell* claim against Defendant Board of Commissioners. The claim against them is dismissed.

Plaintiffs also allege due process violations against Defendants LCCS and its employees. (Doc. 49, at 19). In response, these Defendants argue they are immune under the doctrines of absolute and qualified immunity in their individual capacities. (Doc. 60, at 16).

Social workers are entitled to absolute immunity when they engage in conduct "intimately associated with the judicial process." *Cunningham v. Dep't of Children's Servs.*, 842 F. App'x 959, 967 (6th Cir. 2021) (quoting *Pittman v. Cuyahoga Cty Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 725 (6th Cir. 2011)). Thus, social workers are entitled to absolute immunity "only when they are acting in their capacity as *legal advocates*." *Id*. (quoting *Holloway v. Brush*, 220 F.3d 767, 775 (6th Cir. 2000) (emphasis in original)). A social worker is considered a legal advocate when "initiating court proceedings, filing child-abuse complaints, and testifying under oath." *Id*. (quoting *Barber v. Miller*, 809 F.3d 840, 844 (6th Cir. 2015)). However, this does not include "perform[ing] administrative, investigative, or other functions[.]" *Id*. (quoting *Holloway*, 220 F.3d at 774-75). Because qualified immunity is sufficient to protect

government officials in exercising their duties, the Supreme Court of the United States has been "quite sparing" in granting absolute immunity. *Burns v. Reed*, 500 U.S. 478, 486-87 (1991).

Plaintiffs have not alleged violations regarding the initiation of court proceedings, filing of child-abuse complaints, or testimonies under oath. Thus, Defendants are not entitled to absolute immunity from Plaintiffs' claims. *See Whisman ex rel. Whisman v. Rinehart*, 119 F.3d 1303 (8th Cir. 1997) (holding defendant's failure to investigate (among other claims) did not aid in the presentation of a case to a juvenile court, thus was not prosecutorial in nature and did not form the basis for absolute immunity).

The individual LCCS Defendants additionally assert they are entitled to qualified immunity as to Plaintiffs' Fourteenth Amendment § 1983 claim. (Doc. 60, at 17). The qualified immunity standard is a fact-specific inquiry focused on "whether a reasonable official in the defendant's position could have believed that his conduct was lawful, judged from the perspective of the reasonable official on the scene." *Marcilis v. Township of Redford*, 693 F.3d 589, 598 (6th Cir. 2012) (quoting *Cochran v. Gilliam*, 656 F.3d 300, 306 (6th Cir. 2011)). Specifically, a Court must determine "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Bazzi v. City of Dearborn*, 658 F.3d 598, 606-07 (6th Cir. 2011).

Generally, a state does not have a constitutional duty "to provide substantive services for those within its borders." *Youngberg v. Romero*, 457 U.S. 307, 317 (1982). A state's failure to protect its citizens against private violence is not a constitutional violation. *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989).

However, there are "special relationships" created or assumed by the State that may give rise to an affirmative duty to provide adequate protection. *Id*. First, "when the State takes a

person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *Id*. at 199-200. This exception applies only to injuries that occur when the plaintiff is in the State's custody. *Lipman v. Budish*, 974 F.3d 726, 742-43 (6th Cir. 2020) (citing *DeShaney*, 489 U.S. at 201). The transfer of a child's physical custody to foster parents does not make the State the "permanent guarantor" of the child's safety. *DeShaney*, 489 U.S. at 201. Additionally, as mentioned, the State does not have responsibility for a child's voluntary placement by the natural parents in an abusive private foster home. *K.H. ex rel. Murphy*, 914 F.2d at 849.

Plaintiffs' allegations of injuries all occurred while residing at the Haynes' residence. While Defendants LCCS and its caseworkers transferred physical custody to the Haynes family, they were not the "personal guarantor" of Plaintiffs' safety. *DeShaney*, 489 U.S. at 201. Additionally, Plaintiffs were placed with the Haynes family voluntarily through the consent of their mother. (Doc. 41-2, at 1). Thus, Plaintiffs cannot establish a constitutional violation through the first *DeShaney* exception.

The second *Deshaney* exception, the "state-created danger doctrine," imposes a duty when the State's affirmative conduct either creates or increases the "risk that an individual will be exposed to private acts of violence." *Engler v. Arnold*, 862 F.3d 571, 575 (6th Cir. 2017) (quoting *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998)). To establish liability under this exception, Plaintiffs must allege "1) an affirmative act by the state which either created or increased the risk that [Plaintiffs] would be exposed to an act of violence by a third party; 2) a special danger to [Plaintiffs] wherein the state's actions placed [Plaintiffs] specifically at risk, as distinguished from a risk that affects the public at large; and 3) the state knew or should have known that its actions specifically endangered [Plaintiffs]." *Cartwright v.*

12

*City of Marine City*, 336 F.3d 487, 493 (6th Cir. 2003). The requisite culpability to prove the third prong is "deliberate indifference." *Bukowski v. City of Akron*, 326 F.3d 702, 710 (6th Cir. 2003). Deliberate indifference is defined as "callous disregard for the risk of injury or action in an arbitrary manner that shocks the conscience or that indicates an intent to injure." *Guertin v. State*, 912 F.3d 907, 924 (6th Cir. 2019) (quoting *Schroeder v. City of Fort Thomas*, 412 F.3d 724, 730 (6th Cir. 2005)). Plaintiffs must have been safer before the State action than they were after it. *Cartwright*, 336 F.3d at 493.

Defendant-Caseworker Rebecca Von Sacken conducted an initial home study on July 9, 2014. (Doc. 59-2). At the time of the assessment, Anthony Haynes had a substantiated report of sexual abuse against him in 2003 and Alisa Haynes had two substantiated reports of sexual abuse against her in 2000 and 2003. (Doc. 49-1, at 1-2). According to LCCS Child Welfare Glossary, a report is considered substantiated "through an admission by the person(s) responsible, an adjudication of child abuse and/or neglect, other forms of confirmation deemed valid by the agency, or a professional judgment made by agency staff that child abuse or neglect has occurred." (Doc. 67-4, at 4). "Sexual abuse" is defined as "inappropriate sexual behavior with a child." *Id*. These reports were referenced in the initial home study. (Doc. 59-2, at 2).

Plaintiffs also allege the Haynes' home did not adequately comply with local health and hygiene standards. (Doc. 49, at 18). Finally, Plaintiffs allege Defendants LCCS and its caseworkers failed to perform background checks for all adults in the home as required by law. *Id*. at 10. Plaintiffs contend that given this information, Defendants "ignored the immediate and substantial danger of placing Plaintiffs in the Haynes Family's home." *Id.* at 17.

To start, a failure to act is not considered to be an affirmative act. *Cartwright*, 336 F.3d at 493. Therefore, any allegations based on a failure to investigate cannot be considered affirmative acts constituting a state-created danger.

In Ohio, custody decisions are made by the juvenile court. *See* Ohio Rev. Code §§ 2151.353(A)(3), 2151.414(A)(1). While appropriate placement is initially made by a caseworker, this placement is not binding on interested parties until it is approved by the juvenile court. *Pittman*, 640 F.3d at 729. In this case, the Lucas County juvenile court ultimately placed Plaintiffs with the Haynes family. (Doc. 41-2). The same court granted legal custody. (Doc. 41-4). Thus, it cannot be said that Defendants LCCS and its caseworkers took an affirmative action that placed Plaintiffs in danger.

Plaintiffs have not plead facts that plausibly allege a *DeShaney* violation. Thus, Plaintiffs cannot establish a constitutional right that was violated; the individual Lucas County Defendants are entitled to qualified immunity. The due process claims against Defendants are dismissed.

*42 U.S.C. §§ 1985(3), 1986*

Finally, Plaintiffs bring federal conspiracy claims under 42 U.S.C. §§ 1985(3) and 1986. (Doc. 49, at 19-20). To state a claim under § 1985(3), Plaintiffs must allege:

> (1) a conspiracy; (2) for the purpose of depriving … any person or class of persons of the equal protection of the laws …; (3) an act in furtherance of the conspiracy; (4) an injury to either person or property or a deprivation of any right or privilege of a U.S. citizen.

*In re Cincinnati Radiation Litig.*, 874 F. Supp. 796, 830 (S.D. Ohio 1995) (citing *Voluntary Med. Clinic, Inc. v. Operation Rescue*, 948 F.2d 218, 223 (6th Cir. 1991)). Plaintiffs must also allege some "racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Craft v. Ohio Dep't of Rehab.*, 2015 WL 2250667, *4 (N.D. Ohio) (quoting *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268 (1993) (internal citations

14

omitted)). A plaintiff cannot succeed on a conspiracy claim when "there was no underlying constitutional violation that injured her." *Wiley v. Oberlin Police Dep't*, 330 F. App'x 524, 530 (6th Cir. 2009). "Section 1986 established a cause of action against anyone, who has knowledge of a conspiracy under § 1985, and 'having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do.'" *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 314 (6th Cir. 2005) (quoting 42 U.S.C. § 1986).

Plaintiffs have alleged they are "member[s] of an ethnic minority and an [sic] historically protected class." (Doc. 49, at 6). However, Plaintiffs have not alleged Defendants' actions were motivated by racial or otherwise class-based animus. Additionally, as previously discussed, Plaintiffs have not plausibly alleged an underlying constitutional violation. Thus, Plaintiffs' § 1985(3) claims are implausible. Because Plaintiffs' § 1985 claim fails, their § 1986 claim fails as well. *See Smith v. City of Toledo*, 13 F.4th 508, 520 (6th Cir. 2021) (citing *Radvansky*, 395 F.3d at 314) ("Because Smith's § 1985 claim fails, so does his § 1986 claim."). Both claims are implausible and are dismissed.

<ins>Ohio Law Claims</ins>

Plaintiffs bring several claims against the Lucas County Defendants under Ohio law, including negligence, negligence per se, conspiracy, false imprisonment, and failure to report. (Doc. 49, at 20-3, 26-8). In response, Defendants argue they are entitled to statutory immunity. (Doc. 60, at 18).

*Statutory Immunity*

A political subdivision is generally immune from liability for injuries caused by its acts and omissions "in connection with a governmental or proprietary function." Ohio Rev. Code § 2744.02(A)(1). A political subdivision is defined as "a municipal corporation, township, county,

15

school district, or other body corporate and politic responsible for governmental activities in a geographic area smaller than that of the state. Ohio Rev. Code § 2744.01(F). A political subdivision is presumed to be immune unless an exception applies. *Rankin v. Cuyahoga Cty. Dept. of Child. & Fam. Servs.*, 118 Ohio St. 3d 392, 396 (2008). Under these exceptions, a political subdivision will only be liable for injury, death, or loss to person or property:

>	(1) caused by the negligent operation of any motor vehicle by their employees when the employees are engaged within the scope of their employment and authority;
>
>	(2) caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions;
>
>	(3) caused by the negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads;
>
>	(4) caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function; or
>
>	(5) when civil liability is expressly imposed upon the political subdivision by a section of the Revised code.

Ohio Rev. Code § 2744.02(B). None of these exceptions apply to the facts of this case. The injuries in this case did not involve the operation of a motor, a proprietary function[4], public roads, physical defects of a building, or a duty expressly imposed by statute. *See id*. As a result, the general denial of liability granted in Ohio Revised Code § 2744.02(A) applies to Defendant LCCS. Additionally, for the same reasons as to the federal claims discussed above, Defendant Board of Commissioners is entitled to judgment as a matter of law as to all state law claims against it. Thus, all official capacity state-law claims against these Defendants are dismissed.

---

4. The operation of "children's homes or agencies" is considered a governmental function under Ohio Revised Code § 2744.01(C)(2)(o). Likewise, the operation of a "human services department or agency" is considered a governmental function under Ohio Revised Code § 2744.01(C)(2)(m).

Further, employees of a political subdivision are presumed immune from civil liability in connection to governmental functions. *Krantz v. City of Toledo Police Dep't*, 365 F. Supp.2d 832, 836 (N.D. Ohio 2005). This immunity applies unless "(a) [t]he employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities; (b) [t]he employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or (c) [c]ivil liability is expressly imposed upon the employee by a section of the Revised Code." *Drake v. Vill. of Johnstown, Ohio*, 534 F. App'x 431, 442 (6th Cir. 2013) (citing Ohio Rev. Code § 2744.03(A)(6)).

Plaintiffs allege the individual LCCS Defendants "acted with malicious purpose, in bad faith, and in a wanton or reckless manner toward Plaintiffs." (Doc. 49, at 21). Wanton and reckless conduct is defined as "perversely disregarding a known risk, or acting or intentionally failing to act in contravention of a duty, knowing or having reason to know of facts which would lead a reasonable person to realize such conduct creates an unreasonable risk of harm substantially greater than the risk necessary to make the conduct negligent." *Chesher v. Neyer*, 477 F.3d 784, 797 (6th Cir. 2007) (quoting *Webb v. Edwards*, 165 Ohio App. 3d 158, 166 (2005)). A determination of recklessness in this context is to be made "without using 20-20 hindsight and without emotional consideration." *O'Toole v. Denihan*, 118 Ohio St. 3d 374, 387 (2008). Ohio law requires a high level of willful misconduct before a municipal employee's statutory immunity may be overcome. *Compton v. Donini*, 2011 WL 3861903, *8 (S.D. Ohio).

However, "[w]hen federal qualified immunity and Ohio state-law immunity under [Ohio Rev. Code] § 2744.03(A)(6) rest on the same questions of material fact, [the Court] may review the state-law immunity defense 'through the lens of federal qualified immunity analysis.'" *Hopper v. Plummer*, 887 F.3d 744, 759 (6th Cir. 2018) (quoting *Chappell v. City of Cleveland*,

17

585 F.3d 901, 907 n. 1 (6th Cir. 2009)). Defendants' statutory immunity defense "stands or falls with their federal qualified immunity defense." *Id*. at 760. Because, as discussed above, the individual LCCS Defendants are entitled to qualified immunity, they are likewise entitled to statutory immunity against Plaintiffs' state law claims. Thus, Plaintiffs have not alleged plausible claims against the individual Lucas County Defendants. These claims are dismissed.

In summary, Defendants Board of Commissioners (including Board members Wozniak, Gerken, and Byers) and LCCS (including LCCS employees John/Jane Doe 1-20, Mowery, West, Hickey, Von Sacken, and Lloyd-Jenkins) are granted judgment on the pleadings as to Counts I, II, III, IV, XXII, and XXIII of the First Amended Complaint. Nothing herein impacts the remaining claims in this case: Count IV (civil conspiracy) against Defendants Kenneth Butler, John/Jane Does 21-40, Anthony Haynes, Sr., Alisa Haynes, Alexis Fortune, Markus Fortune, Anthony Haynes, Jr., Cordell Jenkins, Greater Life Christian Center, Abundant Life Ministries, Inc., Pilgrim Assets, Inc., and Mount Hope Church of Jesus Christ (Apostolic), Road to Salvation Ministries, Inc.; Counts V through XXI (child abuse, rape, gross sexual imposition, sexual imposition, sexual battery, unlawful sexual conduct with a minor, importuning, voyeurism, felonious assault, aggravated assault, assault, negligent assault, permitting child abuse, aggravated menacing, menacing, intentional infliction of emotional distress, negligent infliction of emotional distress, and negligent infliction of emotional distress) against Defendants Anthony Haynes, Sr., Alisa Haynes, Alexis Fortune, Markus Fortune, and Anthony Haynes, Jr.; and Count XXII (false imprisonment) against Defendants Anthony Haynes, Sr., Alisa Haynes, Alexis Fortune, and Markus Fortune. *See* Doc. 49.

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendants' Motion for Judgment on the Pleadings (Doc. 60) be, and the same hereby is, GRANTED as set forth herein.

 s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE
